Clerk of Court
United States Court of Appeals for the Second Circuit

Re: **Joseph Romano v. United States, Docket No. 26-15**
Submission: **Notice of Supplemental Evidence**

Date: _February 27, 2026_

Dear Clerk:

Please file the enclosed **Notice of Supplemental Evidence in Support of § 2255(h)(1) Authorization** in the above-captioned matter. This supplement is submitted as soon as practicable after obtaining the referenced record materials.

**Enclosures:**
1. Notice of Supplemental Evidence in Support of § 2255(h)(1) Authorization
2. Certificate of Service
3. Exhibit A — Plot Doc 142 (excerpt)
4. Exhibit B — Michaelides/Machacek docket excerpt (Doc 336; 6/30/2014 minute entry; Doc 340)
5. Exhibit C — Velazquez Doc 579 (excerpt)
6. Exhibit D — SAMs Notice Gold Nugget Excerpt (cover + SAMs pp.2, 4, 5)

Respectfully submitted,

**Joseph Romano**, Petitioner Pro Se
Reg. No. 72247-053
USP Florence ADMAX
P.O. Box 8500
Florence, CO 81226

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
Docket No. 26-15

JOSEPH ROMANO, Petitioner Pro Se,
v.
UNITED STATES OF AMERICA, Respondent.

## NOTICE OF SUPPLEMENTAL EVIDENCE IN SUPPORT OF § 2255(h)(1) AUTHORIZATION

I, Joseph Romano, Petitioner Pro Se, respectfully submit this Notice to supplement my pending application with specific record citations supporting authorization under 28 U.S.C. § 2255(h)(1):

**1. Structural Sanitization at Trial (Plot Doc 142).** In my Plot trial, the District Court granted the Government's motion to preclude impeachment of jailhouse informant Gerald Machacek because the Government was not calling him, and Machacek's recorded statements were admitted only to provide "context," not for their truth; accordingly, the Court held Machacek's credibility was "not relevant" unless he testified.

**2. Objective Sentencing Outcome for Machacek (Michaelides docket / Machacek defendant).** The Michaelides/Machacek docket reflects that Machacek's sentencing was reset to June 30, 2014, by court order (Doc 336). The docket further reflects that on June 30, 2014, Machacek was sentenced to 42 months' incarceration (minute entry entered July 1, 2014), and that final judgment was entered on July 1, 2014, as Doc 340 reflecting "Imprisonment: 42 months total."

**3. Judicial Findings Undermining the Machacek Link (Velazquez Doc 579).** In *United States v. Velazquez*, No. 11-CR-639 (JFB), Doc 579 (June 24, 2016), Judge Bianco noted substantial weaknesses in the government's cooperator identification narrative, including that Machacek, a cooperating witness, was shown three photo arrays containing Velazquez's photo and failed to identify him at all.

**4. SAMs Notice / Machacek Materials (Gold Nugget Excerpt; pinpoint citation pending).** I possess a scanned copy of the Bureau of Prisons Special Administrative Measures ("SAMs") notice relied on by the government post-trial. For the Court's convenience, I attach a short excerpt (cover + SAMs pp.2, 4, and 5) highlighting the passages the Government relies upon. Because the SAMs notice is currently a scanned image, a text-certified copy (or page-exact extraction) is required to permit precise page-line pinpoint citation; I respectfully request permission to supplement with pinpoint citations upon obtaining a text-certifiable copy.

**Conclusion.** These supplemental record citations demonstrate that (i) my jury was instructed to treat Machacek's statements as "context" and was barred from assessing his credibility, while (ii) later judicial findings and record evidence show Machacek's role and reliability were materially contestable. I further request that the Court permit supplementation upon receipt of (a) a text-certifiable SAMs notice and (b) the June 30, 2014 sentencing transcript identified on the Michaelides/Machacek docket, for which the minute entry lists Court Reporter Anthony Frisolone.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: Feb. 27 2026

_____
Joseph Romano, Petitioner Pro Se

**EXHIBIT A**
Plot Doc 142 (excerpt)

Attached hereto as an excerpt for the Court's convenience.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------X
UNITED STATES OF AMERICA          :
                                  :
        -against-                 :        No. 12 Cr. 691 (JFK)
                                  :        MEMORANDUM OPINION & ORDER
JOSEPH ROMANO,                    :
                                  :
             Defendant.           :
-------------------------------X

**JOHN F. KEENAN, United States District Judge:**

Before the Court is the Government's motion in limine seeking to preclude the defense from impeaching the Government's informant, Gerald Machacek, whom the Government is not calling in its case-in-chief. For the reasons that follow, the motion is granted.

The conversation at issue occurred on August 10, 2012 between Defendant and Machacek, who recorded it. It is important to note that Defendant is not seeking the exclusion of the conversation under Rules 403 or 404(b), or any other provision of the Federal Rules of Evidence. Indeed, the Court has admitted the entire recording upon Defendant's motion. See Fed. R. Evid. 106. In opposing the Government's motion, Defendant instead argues that he must be allowed to introduce evidence that undermines Machacek's credibility.

Defendant is mistaken. "The Federal Rules of Evidence provide that a declarant's credibility may be attacked only "[w]hen a hearsay statement, or a statement defined in Rule

801(d)(2)(C), (D), or (E) has been admitted into evidence."
United States v. Perez, No. 05 Cr. 441, 2005 WL 2709160, at *2
(S.D.N.Y. Oct. 20, 2005) (Leisure, J.) (citing Fed. R. Evid.
806). Here, the Government is offering Machacek's statements
to provide context for Defendant's responses and remarks during
the recording. See, e.g., United States v. Sorrentino, 72 F.3d
294, 298 (2d Cir. 1995) (overruled on other grounds)
(confidential informant's statements were not hearsay where
offered not "to prove the truth of the matters asserted but only
to render what [the defendant] said in these conversations
intelligible"); United States v. Walker, No. 99 Cr. 379, 1999 WL
777885, at *4 (S.D.N.Y. Sept. 29, 1999). Because Machacek's
statements are not being offered for their truth, they are not
hearsay as defined in Rule 801(c). Accordingly, Machacek's
credibility is not relevant and, unless he testifies at trial,
there is no valid basis for the defense to call his credibility
into question. See Perez, 2005 WL 2709160, at *4 ("Because the
informant's statements are not hearsay, and because the
government will not call the informant as a witness at trial, it
follows that defendant may not impeach the credibility of the
informant.").

Defendant's remaining arguments in opposition to the
Government's motion in limine are similarly meritless. First,
he purports to distinguish the caselaw cited by the Government

2

at *3.  The defense also remains free to argue in its summation that the jury should draw an adverse inference from the Government's decision not to call Machacek. See, e.g., United States v. Torres, 845 F.2d 1165, 1170-71 (2d Cir. 1988).

**SO ORDERED.**

Dated:    Brooklyn, New York
          January   8   , 2014

                                   s/John F. Keenan
                                   _____
                                   John F. Keenan
                                   United States District Judge

6

**EXHIBIT B**

Michaelides/Machacek docket excerpt (sentencing reset → sentencing → judgment)

06/04/2014 Doc 336 ORDER as to Gerald Machacek: Sentencing reset for 06/30/2014 at 10:30 AM in Chambers before Visiting Judge John F. Keenan.

06/30/2014 (Minute Entry) Sentencing held: Incarceration 42 months; Supervised Release 5 years; Special Assessment $300; Court Reporter Anthony Frisolone present. (Entered 07/01/2014).

07/01/2014 Doc 340 JUDGMENT as to Gerald Machacek: Imprisonment 42 months total (counts concurrent); Supervised Release 5 years total; Special Assessment $300.

*Source:* Docket excerpt for Gerald Machacek within United States v. Michaelides, et al. (11-CR-639 (JFB)).

**EXHIBIT C**
United States v. Velazquez, Doc 579 (excerpt)

Attached excerpt includes the caption page and the page containing the Court's discussion that Machacek was shown three photo arrays containing the defendant's photo and failed to identify the defendant.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

Nª 11-CR-639 (JFB)

UNITED STATES OF AMERICA,

VERSUS

ADAM VELAZQUEZ,

Defendant.

**MEMORANDUM AND ORDER**
June 24, 2016

JOSEPH F. BIANCO, District Judge:

On May 1, 2014, a jury convicted defendant Adam Velazquez ("Velazquez" or "defendant") of five crimes related to defendant's participation in a conspiracy to rob drug traffickers and business owners in New York City and Long Island.[1] Velazquez now moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

Velazquez asserts, among other things, that he should be granted a new trial based on the ineffective assistance of his trial counsel. Velazquez asserts that his trial counsel made numerous errors, including failing to investigate alibi evidence in the form of cell phone, work, and school records, and failing to introduce evidence that Velazquez did not in fact have a black, four-door sedan in 2009, as the government alleged. For the reasons set forth below, after careful consideration of the parties' written submissions, the trial record, and the evidentiary hearing, the Court grants the motion for a new trial based upon ineffective assistance of trial counsel.

As a threshold matter, having presided over the trial, it was apparent to the Court that defense counsel was prepared during the course of the trial, conducted thorough cross-examinations of the government's witnesses, and gave effective opening and closing statements to the jury. There is no doubt that he took his responsibility as defense counsel in this case very seriously, that he is an experienced and talented

---

[1] The jury returned a verdict of guilty with respect to the following counts charged in the superseding indictment: (1) Hobbs Act Robbery Conspiracy, 18 U.S.C. § 1951(a) (Count One); (2) Hobbs Act Robbery at 152ᵈ Street in Queens, New York, 18 U.S.C. § 1951(a) (Count Three); (3) Brandishing of a Firearm During a Crime of Violence, 18 U.S.C. § 924(c)(1)(A)(ii) (Count Four); (4) Conspiracy to Distribute Controlled Substances, 21 U.S.C. §§ 841(a)(1), 846 (Count Seven); and (5) Conspiracy to Launder Money, 18 U.S.C. § 1956(h) (Count Eight). The jury acquitted defendant on the remaining three counts charged in the superseding indictment, which were (1) Interstate Transportation of Stolen Property, 18 U.S.C. § 2314 (Count Two); (2) Hobbs Act Robbery at 99ᵈ Street in Queens, New York (Count Five); and (3) Using or Carrying a Firearm During a Crime of Violence (Count Six).

The substantial weaknesses in Glass's testimony is further reflected in the fact that his testimony was not corroborated by other government cooperating witnesses who did not testify. In particular, Glass told investigators that Machacek had extensive contacts with the co-conspirator whom Glass had picked out as the defendant, including that: (1) Machacek introduced Glass to the defendant "at the end of '08" (Trial Tr. 416-17, 588, 677, 693); (2) Machacek was in the presence of the defendant "many times" and "vouched for [defendant] and trusted him" (*Id.* at 685, 725); (3) Machacek participated in the charged New Jersey warehouse burglary with the defendant (*Id.* at 423-42); (4) Machacek and the defendant drove together to commit the charged doctor's office robbery (*Id.* at 465, 469-71); (5) Glass, Machacek, and the defendant robbed the Glen Oaks Bar together (which was part of the charged robbery conspiracy) (*Id.* at 481-86); and (6) Glass, Machacek, and the defendant burglarized a construction company and all left there in the same vehicle (*Id.* at 473-75). However, Machacek, who is a cooperating witness with the government, was present with three photo arrays containing the defendant's photo, and failed to identify the defendant at all. (Apr. 7, 2014 Hrg. Tr. at 11, 21; Trial Tr. at 1035; Trial Ex. 10; Tr. at 6.) Similarly, Teri Bedell, who was a co-conspirator and Glass's girlfriend, also was a cooperating witness for the government. Bedell participated in several of the charged robberies against Velazquez, including the 152nd Street robbery, the doctor's office robbery, and the New Jersey warehouse robbery. (Trial Tr. at 451-54, 586-88.) However, Bedell also did not identify the defendant as a participant in those robberies. (Tr. at 6; Trial Ex. 10.)

Cooperating witness Martin Lovly also had substantial credibility issues. Initially, Lovly did not positively identify the defendant when shown a photo array, but rather, just indicated that he had seen him at Ralphie's barber shop. (*See* Def. Ex. 261; Tr. 240-42.) Ultimately, Lovly positively identified the defendant as an accomplice for the robbery one week later, without being shown another photo array; rather, Lovly indicated that he was now "100 percent sure" after thinking about the photo array for one week. (Tr. at 243-44; *see also* Def. Ex. 262.) That delayed identification was further undermined by the fact that (1) the robbery had occurred five years earlier, and Lovely had been involved in dozens of robberies (Trial Tr. at 252); and (2) Lovely said he met the defendant only an hour before the crime, and the defendant was wearing a hoody (*Id.* at 225-26, 302); and (3) Lovely was on heroin at the time of the robbery. (*Id.* at 375.) Lovely also incorrectly told investigators that the defendant was a "dark skinned Dominican[]." (*Id.* at 314-15.)[23]

Based upon the jury's verdict, there is no question that the jury had issues with the credibility of the cooperating witnesses, including two of whom identified the defendant as having been involved in the 152nd robbery – that is, Glass and Michaelides. For example, the jury acquitted the defendant of the interstate transportation of stolen property charge relating to the New Jersey Warehouse burglary, even though both Glass and

[23] The government has a third cooperating witness, Athanasios Michaelides, who testified, among other things, about the defendant's involvement in the 152nd Street robbery. However, Michaelides never identified the defendant prior to trial, but rather identified the defendant for the first time during the trial. Moreover, prior to trial, Michaelides and defendant had interacted as co-defendants on the prison bus and in the courtroom, and Michaelides acknowledged that he told Velazquez that he had no idea who he was or what he was doing there. (Trial Tr. 999-1001, 1007.)

36

**EXHIBIT D**
SAMs Notice — Gold Nugget Excerpt (cover + SAMs pp.2, 4, 5)

Attached excerpt is provided for convenience; Petitioner requests permission to supplement with pinpoint citations upon obtaining a text-certifiable copy.

### JOSEPH ROMANO — SAMs NOTICE (June 1, 2015)

Gold-Nugget Excerpt (for pinpoint citations): Pages 2, 4, and 5 of 16.

**Target passages included:**
• Page 2: allegation referencing a "hand-written note" provided by Romano (basis cited for SAMs).
• Page 4: allegation referencing April 14, 2014 sentencing hearing and purported 'aggressive outbursts'.
• Page 5: allegation referencing 'Jencks Act material' and the USA/WDNY request for SAMs (with FBI concurrence).

Notification of Special Administrative Measures
Joseph Romano, Reg. No. 72247-053
June 1, 2015
Page 2

custody of the United States Marshals Service at the Nassau County Correctional Center (NCCC). In September 2010, the case proceeded to trial, and you pled guilty during jury selection. In February 2012, Judge Bianco sentenced you to fifteen years of imprisonment and ordered the forfeiture of approximately $7 million.

After the sentence was imposed, you remained in confinement at the NCCC pending the resolution of the restitution portion of your coin fraud case. During that period, you orchestrated a plot to murder Judge Bianco and AUSA Gatz in retaliation for your prosecution and the sentence. To that end, you solicited the assistance of hitmen who, unbeknownst to you, were undercover officers (UC1 and UC2). At the initial meeting with UC1, you offered to pay UC1 $3,000 to assault an auto mechanic who had seized two of your vehicles after you defaulted on the bill. Based on his communications with you, UC1 understood this assignment to be a test of his ability to carry out the murders. You informed the UC that you had "a whole bunch more" after that attack was completed. At your direction, co-conspirator Mirkovic delivered to UC2 $1,500 as a down payment for the assault on the mechanic. In September 2012, UC1 met with Mirkovic and gave him a staged photograph purporting to evidence the assault on the mechanic, along with an identification card belonging to the mechanic, as proof of the assault. Mirkovic paid the $1,500 balance.[2]

Later that same day, Mirkovic again met with UC1 and, at your direction, instructed UC1 to murder Judge Bianco and AUSA Gatz, offering $40,000 for the commission of the two murders. From custody, you further directed Mirkovic to offer UC1 a bonus if he beheaded both Judge Bianco and AUSA Gatz, and severed AUSA Gatz's breasts. Mirkovic also advised UC1 that you were also interested in having three of your former attorneys beaten. Over the following weeks, you paid UC1 $22,000 in cash down payments for the murders and promised payment of the final $18,000 when the murders were completed. You provided instructions and remained in constant communication with Mirkovic via telephone, jail visits, and correspondence. To conceal your placement of calls from within the jail, you used the Personal Identification Numbers (PINs) of 34 different inmates to surreptitiously place the calls to Mirkovic.

In September 2012, you were transferred from the NCCC to the GEO Queens Private Detention Facility in Jamaica, New York (GEO). Your transfer resulted, in part, because NCCC officials discovered you were planning an escape from custody. Additionally, you demonstrated your commitment and ability to circumvent prison restrictions and to continue to direct illegal activity while incarcerated. A review of the NCCC telephone records revealed that you had placed 794 calls to co-conspirator Mirkovic using other

---

[2] Based on Romano's post-arrest statements and further investigation, law enforcement officers learned that, in March 2012, Romano solicited another inmate at NCCC to attack the auto mechanic. Law enforcement officers recovered from the inmate (after his release) a hand-written note provided by Romano with the auto mechanic's name, address, and description.

**"Sensitive But Unclassified"**

Notification of Special Administrative Measures
Joseph Romano, Reg. No. 72247-053
June 1, 2015
Page 4

Your anger toward the government has increased since your April 14, 2014, sentencing hearing. During the sentencing hearing, you spoke on your own behalf for approximately 45 minutes, expressing anger toward the government for both your coin fraud and murder conspiracy convictions. You directed what was described as aggressive outbursts toward the prosecuting attorneys and the United States Postal Service Investigator who handled the coin fraud case, accusing them of "evil designs against you." Persons who witnessed these and other outbursts during the sentencing hearing verified your aggressive tone, eye contact, and body language.

Additionally, during a May 22, 2014, conference regarding restitution in the coin fraud case, you spoke at length to the magistrate judge presiding over the matter about how the government should be held in contempt for committing prosecutorial misconduct. One of the prosecutors was in the gallery to observe the proceedings. You pointed out the prosecutor's presence in the gallery to the court, calling it a "cameo appearance" and accused the prosecutor of participating in a cover-up of prosecutorial misconduct. While not directly threatening, your conduct evinces your continued rage against the prosecution team and the government.

You have also written harassing letters to the district court judge who presides over the restitution segment of your case and to Judge Bianco. In June and July 2014, you sent letters to Judge Bianco. In these letters, you accused Judge Bianco of being responsible for your placement in the SHU and of "playing along with the murder-for-hire scheme," stating that you did not and cannot believe that [Judge] was the "author of such a plot," but would expose him when and/or if you found out otherwise. You also blamed Judge Bianco for contributing to your father's pain because you and your brothers are incarcerated as a result of the coin fraud scheme, and your father died without being able to see them. The letters, coupled with your outbursts during court, reveal that you continue to harbor ill will toward the court, the prosecutors, and the government.

A review of recorded conversations during the murder conspiracy and reports of your conduct from prison reveal that you purposefully communicate non-verbally, using hand gestures, speak in whispered tones or with your hands obstructing your mouth, and abruptly change topic when guards are present. During the murder conspiracy, you spoke to your co-conspirators using coded language, referring to the murder plot as a "Dodge truck." In an August 18, 2014, letter to a friend, you asked the third party to obtain some addresses for you. The letters appear to be intentionally cryptic, as you know your mail is monitored.

Finally, on September 11, 2014, you sent a letter to your wife. Enclosed in the letter was sensitive *Jencks* Act material of a witness, which material had been provided to you during the murder conspiracy trial. This disclosure of the *Jencks* Act material was unauthorized as the material is covered by a protective order that prohibits the defense from further dissemination of the material. Law enforcement authorities do not know

**"Sensitive But Unclassified"**

Notification of Special Administrative Measures
Joseph Romano, Reg. No. 72247-053
June 1, 2015
Page 5

your purpose in sending the *Jencks* Act material to your wife, but believe that there is a likelihood you sent the material to your wife as part of a plan to retaliate against the witness.

The USA/WDNY requests Special Administrative Measures (SAM) be imposed on you because there is a substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons. The Federal Bureau of Investigation (FBI) concurs. In support of this conclusion, the USA/WDNY cites (1) your previous communications in code; (2) your lengthy history of communicating through other inmates; (3) your demonstrated ability to thwart existing prison regulations regarding communications; (4) your ability to circumvent standard prison procedures used to control your ability to communicate with others outside of prison; (5) your ability to direct persons outside of prison to commit acts of violence on your behalf and carry out your directives; and (6) your efforts to retaliate against various government personnel, witnesses, your defense attorney, and their families.

Based upon information provided of your proclivity for violence, it was found there is substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. Therefore, pursuant to 28 C.F.R. § 501.3, it was requested we continue to implement the SAM to restrict your access to the mail, the media, the telephone, and visitors. This SAM will be in effect for one year from the date of approval, subject to further direction.

1. **General Provisions:**

   a. **Adherence to Usual United States Marshals Service (USMS), Bureau of Prisons (BOP), and Detention Facility (DF) Policy Requirements** – In addition to the below listed SAM, you must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc. If there is a conflict between the USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM is more restrictive than usual USMS/BOP/DF policies, then the SAM shall control. If usual USMS/BOP/DF policies are more restrictive than the SAM, then the USMS/BOP/DF policies shall control.

   b. **Interim SAM Modification Authority** – During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify your SAM as long as any SAM modification authorized by OEO:

      i. Does not create a more restrictive SAM;

      ii. Is not in conflict with the request of the USA/WDNY, FBI, or USMS/BOP/DF, or applicable regulations; and

   **"Sensitive But Unclassified"**

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
**Docket No. 26-15**

JOSEPH ROMANO, Petitioner Pro Se,
v.
**UNITED STATES OF AMERICA**, Respondent.

### CERTIFICATE OF SERVICE

I, Joseph Romano, Petitioner Pro Se, certify that on _____Feb-27_____, 2026, I served a true and correct copy of the foregoing Notice of Supplemental Evidence in Support of § 2255(h)(1) Authorization, with Exhibits A–D, by institutional legal mail upon the United States Attorney's Office (Respondent).

**Address used for service (United States Attorney's Office, EDNY):**
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _____Feb-27_____, 2026

_____
Joseph Romano, Petitioner Pro Se

Case: 26-15, 03/13/2026, DktEntry: 17.1, Page 17 of 18

Name:
Reg No: (72747053)
U.S. Penitentiary MAX
P.O. Box 8500
Florence, CO. 81226-8500

26-060



Denver, CO P&DC
TUE 10 MAR 2026

Clerk of the Court
United States Court
of Appeals for the
Second Circuit
40 Foley Square
New York, N.Y.
10007

FEDERAL PRISON CAMP,
P.O. BOX 8782
, COLORADO 81226

LEGAL MAIL

processed through special mailing
to you. The letter is neither
If the writer has a question
facility has jurisdiction, you may
further information or clarification.
correspondence for forwarding to another
enclosed to the above address.

MAR 1 6 2026