UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
Docket No. 26-15

RECEIVED

JOSEPH ROMANO,
Petitioner,
-against-
UNITED STATES OF AMERICA,
Respondent.

# PETITIONER'S REPLY IN SUPPORT OF THE AMENDED MOTION FOR AUTHORIZATION TO FILE A SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255(h)(1)

Petitioner Joseph Romano submits this reply under Fed. R. App. P. 27(a)(4) to the Government's opposition (DktEntry 49.1) ("Opp."). The opposition never cites Doc. 168, the Rule 29 decision identifying the source for the July 2012 meeting. It therefore never reaches the question presented: what reliable firsthand evidence showed Romano ready and willing to commit the charged conspiracy before government-directed contact through Gerald Machacek, once that source is considered with Doc. 579 and Government Exhibit 3500-GM-14.

## I. The Opposition Does Not Answer the Claim Presented

The opposition recasts the claim as an assertion that Machacek "was an unreliable witness." Opp. at 9. That is not the claim. The amended motion is tied to Judge John F. Keenan's own Rule 29 reasoning. Doc. 168 states that "the jury heard from Machacek that Defendant had talked about his plans for revenge at

their first meeting in July 2012, before any Government involvement." Doc. 168, No. 1:12-cr-00691-DC (E.D.N.Y.), at 6, PageID #: 1676. It then reasons conditionally: "If the jury credited the testimony of Machacek and Investigator Cox, as the Court assumes under Rule 29, then they properly concluded that Defendant had a 'preexisting' idea to kill the Judge and AUSA, and was 'ready and willing' to do so." Id. at 12-13, PageID #: 1682-1683. Doc. 168 also identified the evidence behind that conclusion. For the Government's theory that Romano had "already planned to kill the Judge and AUSA before meeting Machacek," the order cites "Trial Tr. at 1345, 1427, 1430-31." Id. at 12, PageID #: 1682. Pages 1427 and 1431 are Machacek's testimony. Id. at 2, PageID #: 1672. Page 1345 is Investigator Cox's testimony about Romano's October 9, 2012 post-arrest interview. Id. at 7, PageID #: 1677. The court expressly relied on the same July account in rejecting inducement and again in its alternative predisposition analysis. Id. at 6, 12, PageID #: 1676, 1682. The source question therefore reaches both grounds, though the other evidence remains part of the evidence as a whole.

The claim is that Doc. 168 identifies no firsthand source other than Machacek for the July 2012 pre-contact meeting used in its entrapment analysis. The opposition never cites Doc. 168, never addresses its conditional reasoning at PageID #: 1682-1683, and never identifies another firsthand source for that

meeting or a transcript page where one appears. The claim actually presented remains unanswered.

**II. The Letter's Present Significance Depends on Later Facts**

The application acknowledges that the physical letter was known before trial. The opposition quotes, "The letter is not independently newly discovered" (Opp. at 10), but omits the next sentence: "Its evidentiary significance is." DktEntry 41.1, Page 17 of 321. Doc. 579 later supplied adjudicated historical facts absent from Romano's trial record and materially changed the letter's evidentiary significance when considered with Doc. 168 and 3500-GM-14.

Government Exhibit 3500-GM-14 is Machacek's own contemporaneous account, not an independent source for the July meeting. DktEntry 41.1, Ex. I, Pages 134-137 of 321. Much of it favors the Government. Machacek reported that Romano wanted the Judge and the Assistant United States Attorney killed and was intent on revenge. Machacek wrote that he would "see where his head is at" and, "if he brings it up," persuade him it was "a bad idea." The passage contemplated influencing a later encounter, cuts both ways, and does not itself prove inducement. Romano relies on two identification details. Its author wrote that he was not sure of the Assistant United States Attorney's name and would try to obtain it. Id., Page 136 of 321. At the close he wrote that the man's first name was Joe and that he would get the last name if he could. Id., Page 137 of 321. Those two identification

details do not disprove what the letter reports. They bear on what this source could then identify about the people he described, the capacity Doc. 579 later addressed.

Doc. 579 later documented specific facts bearing on that source. Following an evidentiary hearing held March 31 and April 20-22, 2016, Doc. 579, No. 2:11-cr-00639-JFB (E.D.N.Y.), at 8, PageID #: 3210, Judge Joseph F. Bianco found that Machacek was presented with three photo arrays containing Velazquez's photograph and "failed to identify the defendant at all." Id. at 36, PageID #: 3238; at 4, PageID #: 3206. Romano does not ask this Court to adopt a credibility label. He relies on later documented facts, absent from his trial record, bearing on the source Doc. 168 identified.

Herrera-Gomez involved an issue the petitioner admitted discussing with counsel during his criminal case. Opp. at 11; Herrera-Gomez v. United States, 755 F.3d 142 (2d Cir. 2014). This claim depends on Doc. 579, which did not exist until after direct review ended.

**III. The Present Question Was Not Previously Decided**

The opposition says "the issue related to the Velazquez decision was squarely resolved in the second petition." Opp. at 14. Doc. 287 rejected a different claim: that Judge Bianco had found the informant to be an unreliable heroin addict. Doc. 287, No. 1:12-cr-00691-DC (E.D.N.Y.), at 15-16, PageID #: 3230-3231. It did not analyze Doc. 168, the pre-contact role assigned to Machacek's July

Case: 26-15, 08/17/2026, DktEntry: 53.1, (5 of 16)

account, or the relationship among Doc. 168, Doc. 579, and 3500-GM-14. The underlying identification evidence included testimony from an April 7, 2014 hearing, but Judge Bianco made the findings after the 2016 evidentiary proceedings and issued them June 24, 2016, after Romano's January 2014 verdict and after his direct appeal. Doc. 579 at 8, PageID #: 3210; at 36, PageID #: 3238.

The opposition states that Romano then amended, "explicitly withdrawing his claim alleging the violation of a constitutional right and substituting in a claim of newly discovered evidence." Opp. at 5. Doc. 298 addressed the transferred motion, not the amended application now before this Court. Judge Chin wrote: "Regardless, because Romano has not sought the requisite certification from the Second Circuit, this Court lacks jurisdiction to address the merits of the motion." Doc. 298 at 4, PageID #: 3479. Pitcher bars relitigation of claims decided on direct appeal, and Yick Man Mui extends the appellate mandate to issues impliedly resolved. Bousley addresses claims omitted from direct review absent cause and prejudice or actual innocence. United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009); Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010); Bousley v. United States, 523 U.S. 614, 622 (1998). None establishes that this source-specific claim was decided, impliedly resolved, or available before Doc. 579 existed. Judge Keenan decided the Rule 29 motion on the trial record before him; Judge Bianco later documented the photo-array failures in a different case.

Case: 26-15, 08/17/2026, DktEntry: 53.1, (6 of 16)

## IV. Diligence Must Be Measured Under Romano's Actual Conditions

The opposition rests timeliness on public availability: Doc. 579 "was available at that time to Romano and any member of the public, including Romano's wife." Opp. at 12. Section 2255(f)(4) asks when the facts supporting the claim could have been discovered through due diligence, not merely when one document appeared on a public docket. Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000), requires attention to when a duly diligent person in the petitioner's circumstances would have discovered those facts. The opposition does not conduct that inquiry. Nor does public availability establish that Romano possessed the other records needed to recognize the claim, authenticate the connection, and present it in a usable filing.

Section 2255(h)(1) governs authorization; Section 2255(f)(4) governs when the supporting facts could have been discovered. The two inquiries cannot be collapsed into public docket availability.

Those circumstances are documented. Before Doc. 579 existed, Judge Keenan entered an order on September 25, 2014 directing confiscation of all Trial Discovery in Romano's possession, custody, or control. Doc. 185 at 5, PageID #: 1879. The Government described the discovery Romano had mailed as "sensitive Trial Discovery" that "has never been made public," and sought the return of all copies of Trial Discovery in his possession. Doc. 180 at 1-2, PageID #: 1848-1849.

Case: 26-15, 08/17/2026, DktEntry: 53.1, (7 of 16)

When Doc. 579 issued, Romano no longer possessed the original Jencks set. His declaration states that Karen Romano's preserved copy was his only access after confiscation and that he lacked the outside records needed to assemble this claim. DktEntry 41.1, Ex. T ¶¶ 5-6, Page 308 of 321.

Romano was attempting to reconstruct the record from USP Florence ADMAX under Special Administrative Measures. Family communications were restricted, monitored, and delayed; correspondence was limited; extended mail review was permitted; and he had no electronic access to the separate court dockets. DktEntry 41.1, Ex. R at Pages 298-300; Ex. T ¶ 7 at Page 308; Ex. U ¶¶ 8, 14 at Pages 312-313. Karen Romano obtained PACER, taught herself the dockets, began reviewing related cases around 2022, and, beginning no later than January 2025, conducted the systematic review that connected Doc. 579 to Doc. 168. Ex. U ¶¶ 6-7 at Page 312. She transmitted the findings through monitored correspondence across many letters. Romano researched, pursued, authorized, and signed the claim; Karen gathered and transmitted the outside record because he could not assemble it from prison in real time. DktEntry 41.1, Ex. T ¶ 12 at Page 309; Ex. U ¶ 14 at Page 313.

The opposition calls this an election "to defer this filing in order to compile" evidence. Opp. at 12. The record describes conditions, not an election. Hizbullahankhamon involved a 22-day loss of access to legal materials; Mata

Case: 26-15, 08/17/2026, DktEntry: 53.1, (8 of 16)

involved information about the petitioner's own attorney that could have been investigated earlier. Hizbullahankhamon v. Walker, 255 F.3d 65, 75-76 (2d Cir. 2001); Mata v. United States, 969 F.3d 91, 94 (2d Cir. 2020). Neither involved confiscated discovery, years without electronic access, monitored communications, and facts spread across separate cases that no court had considered together. Public availability was not practical access. The Government's public-availability argument does not account for its successful request that the protected trial discovery be removed from Romano's possession before Doc. 579 issued. The one-year inquiry must account for when the supporting facts could reasonably have been located, obtained, verified, and communicated under the documented conditions.

**V. The Opposition Does Not Resolve the Pre-Contact Source Question**

The opposition cites recorded conversations, an undercover officer's negotiations and receipt of payment, Romano's admission to law enforcement, and this Court's description of the evidence disproving entrapment as "overwhelming." Opp. at 14-15. That description arose in holding any instructional error harmless. United States v. Romano, 630 F. App'x 56, 60 (2d Cir. 2015) (summary order). Its inducement discussion identified two items supporting the conclusion that Romano initiated the conspiracy: "the jury heard testimony that Romano had discussed his plans for revenge prior to any government involvement and that Romano himself

Case: 26-15, 08/17/2026, DktEntry: 53.1, (9 of 16)

had admitted to law enforcement that the murder plot 'was his idea.'" Id.; DktEntry 41.1, Ex. C, Page 107 of 321. Those correspond to the same two evidentiary sources cited in Doc. 168: Machacek's account of the July 2012 pre-contact meeting and Cox's testimony concerning Romano's October 9, 2012 post-arrest admission. The delivered charge required proof that, "prior to first being approached by government agents, the defendant was ready and willing to commit the crime." DktEntry 41.1, Ex. J, Pages 143-144 of 321 (Trial Tr. 1631-32). The same charge permitted reliance on post-approach conduct "only if that conduct is independently motivated and not the product of attention that the Government might have directed at the defendant." Id.

The Government answers the required pre-contact inquiry primarily with evidence recorded, obtained, or developed after contact began. Opp. at 14-15. At trial the Government told the jury Machacek's testimony was immaterial because nearly all the evidence was recorded. Doc. 287 at 16, PageID #: 3231 (quoting Trial Tr. 1476). The first recording occurred August 10, 2012, at the second meeting. Doc. 168 at 2, PageID #: 1672. The recordings it cites are later. Doc. 168 described the statements underlying the direct-appeal reference to an earlier witness threat as "ostensibly" Romano's recollections of earlier conduct, made during the August 10 recorded conversation. Doc. 168 at 10-11, PageID #: 1680-1681. That prior conduct concerned the coin fraud case, not the July 2012 meeting.

Post-contact evidence may support an inference of earlier predisposition if independent of Government inducement. Jacobson v. United States, 503 U.S. 540, 550 (1992). Doc. 168 recognized that post-contact statements are "generally admissible to prove predisposition." Doc. 168 at 11, PageID #: 1681. Romano does not contend otherwise. Admissibility is not the question; the source of the pre-contact account is. If a defendant proves inducement by a preponderance of the evidence, the Government must prove predisposition beyond a reasonable doubt. Doc. 168 at 5, 8, PageID #: 1675, 1678.

The opposition itself quotes the controlling gatekeeping standard: it is "not a particularly high" bar; Romano need show only a sufficient likelihood of satisfying § 2255 to warrant fuller district-court review. Opp. at 8 (quoting Haouari v. United States, 510 F.3d 350, 353 (2d Cir. 2007)). The opposition's next sentence is equally correct: the panel must be able to certify that the application satisfies every statutory requirement. Id. Romano accepts both.

At authorization Romano need not prove the claim. He must show a sufficient likelihood that the newly discovered evidence, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. § 2255(h)(1); Haouari, 510 F.3d at 353. The showing is not that the later evidence disappears. It is that Doc. 168 identified

Case: 26-15, 08/17/2026, DktEntry: 53.1, (11 of 16)

Machacek as the firsthand source for the pre-contact meeting and made its predisposition conclusion conditional on crediting him. When the letter was transmitted, its author had not yet learned Romano's last name. Doc. 579 later found that the same cooperator failed three times to identify a person another cooperating witness said he knew extensively. The recordings, negotiations, payment, and Romano's admission to law enforcement remain part of the evidence as a whole and may support an inference of earlier predisposition. But none supplies another firsthand account of the July 2012 meeting for which Doc. 168 identified Machacek as the source, and the opposition does not explain how the later evidence should be weighed once that source is considered with Doc. 579 and 3500-GM-14. A factfinder would have to reassess the observational foundation and evidentiary role of Doc. 168's source for the July meeting, not treat that question as answered.

**VI. Conclusion**

The opposition discusses the letter, Doc. 579, and the later evidence separately, but never addresses their combined effect on the pre-contact source identified in Doc. 168. Finality is important, but it cannot replace the statutory inquiry, convert post-contact evidence into proof of pre-contact readiness, or transform restrictions imposed on Romano into voluntary delay. The opposition identifies no firsthand source for that meeting and no prior decision adjudicating

Case: 26-15, 08/17/2026, DktEntry: 53.1, (12 of 16)

the relationship among Doc. 168, Doc. 579, and 3500-GM-14. Romano does not ask this Court to decide the ultimate merits. Under the prima facie standard, he asks only that the district court be permitted to hear the claim. Petitioner respectfully requests authorization under 28 U.S.C. § 2255(h)(1).

Dated: August 4, 2026

Respectfully submitted,

Joseph Romano, pro se
Reg. No. 72247-053
USP Florence ADMAX
P.O. Box 8500, Florence, CO 81226

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C) because it contains 2,554 words, excluding the parts exempted by Fed. R. App. P. 32(f). This reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Liberation Serif.

Dated: August 4, 2026

Joseph Romano, pro se

Case: 26-15, 08/17/2026, DktEntry: 53.1, (13 of 16)

## CERTIFICATE OF SERVICE

I, Joseph Romano, hereby certify under penalty of perjury that on August 4, 2026, I deposited copies of the foregoing Reply in the institution's legal-mail system at USP Florence ADMAX, with first-class postage prepaid and addressed to:

Michael DiGiacomo, United States Attorney, United States Attorney's Office, Western District of New York, 138 Delaware Avenue, Buffalo, New York 14202.

Susan Corkery, Dylan Alexander Stern, and Amanda Muros-Bishoff, Assistant United States Attorneys, United States Attorney's Office, Eastern District of New York, 271-A Cadman Plaza East, Brooklyn, New York 11201.

RECEIVED

Dated: August 4, 2026

Joseph Romano, pro se

## DECLARATION OF INMATE FILING

I am an inmate confined at USP Florence ADMAX. Pursuant to Fed. R. App. P. 25(a)(2)(A)(iii), I declare under penalty of perjury that on August 4, 2026, I deposited the foregoing Reply in the institution's internal legal mail system, with first-class postage prepaid, addressed to the Clerk of the United States Court of Appeals for the Second Circuit, Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007. I further declare that I received the Government's opposition, DktEntry 49.1, through institutional legal mail on July 29, 2026.

Executed on August 4, 2026.

[signature]

Joseph Romano, Reg. No. 72247-053

On July 29, 2026 I Joseph Romano receved the Govts. brief at 2:00pm Mountain time through institutional Mail.

Dated August 4, 2026 [signature]

RECEIVED




SDNY

Clerk of the Court
United States Court of
Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York
10007